## THE STATE v. CLOUD.

1. The offence of keeping a house of public entertainment for travellers, either in town or country, without first obtaining a license therefor from the county court, is punishable by indictment or presentment, although spirituous liquors be not retailed in the house ; but no tax can be demanded on granting a license to keep a house of public entertainment, unless it be in a city or incorporated town or village.

NOVEL and difficult questions from the Circuit Court of Russell.

The defendant was indicted for keeping a tavern without first obtaining a license from the county court.

The defendant demurred to the indictment, which was overruled by the court. Upon the trial, it appeared that the defendant kept an orderly house for the entertainment of such travellers as would stop with him, not in any town, village or city, but on his own farm, in the country, and did not retail spirituous liquors. Upon which the defendant moved for a charge, that it was not an offence for which an indictment would lie; which the court refused; and the jury found him guilty.

THE ATTORNEY GENERAL, for the State.
HEYDENFELDT, *contra.*

ORMOND, J.—It is contended by the counsel for the defend-

ant, that there is no law in force subjecting the defendant to indictment for keeping a country inn, or house of entertainment for travellers. The question depends upon the construction of the different statutes.

The act of 1807, [Clay's Digest, 554,] gave authority to the county court to issue a license to keep tavern, to any one who should be recommended for that purpose; by six or more reputable freeholders of the county, on his paying to the clerk twenty dollars for the use of the county. Bond was required in the penalty of three hundred dollars, with condition to provide good, clean, wholesome diet and lodgings for travellers, and stabling and provender for horses; and the rates of charges were to be regulated by the county court.

This act did not, in terms, make the offence of keeping a tavern without license indictable; but by the act of 1812, persons offending against the act were subjected, on presentment by the grand jury, to a fine not exceeding one hundred dollars; and the clerk of the county court was required to furnish the court with a list of all persons who had obtained tavern licenses within one year preceding. [Clay's Dig. 505, § 10.]

In 1827, an act was passed to raise a revenue, which imposed a tax of ten dollars for a license to keep a house of entertainment in any city or town without retailing spiritous liquors. [Aik. Dig. 410.] This act repeals so much of the act of 1807 as required twenty dollars to be paid on obtaining a license to keep a tavern; and as the act expressly confines the tax to those who obtain license, "to keep a house of entertainment in any city or town," nothing could be demanded of those who obtained a license to keep a house of entertainment in the country.

By the act of 1836, all State taxation was abolished; but the commissioners' courts were authorized to levy a tax for county purposes on the subjects of State taxation.

Thus the law stood until 1843, when an act was passed to raise a revenue, and a tax of fifty dollars laid upon tavern licenses in cities, and ten dollars in a town or village incorporated; the commissioners' court being again authorized to levy a tax, not exceeding thirty per cent. on the subjects of State taxation, for county purposes. [Clay's Dig. 560, § 13, 19.]

From this summary of the legislation on the subject, it appears that no State tax is laid upon licenses to keep a house of enter-

tainment, unless it be in a city or incorporated town or village, and, consequently, there can be no county tax on a country license; but the supervision of the county court over houses of public entertainment, whether in town or country, as a police regulation, is still reserved; and no person has the right to keep a public house for the entertainment of travellers, without first obtaining license from the county court in the mode pointed out by law.

It is a matter of great public concernment, that those who keep houses of public entertainment, should be fit and proper persons, that the persons and property of travellers may be safe—that they should be required to make suitable provision for their accommodation, and their rates be known and fixed. These are matters in which the community have a greater interest than in the tax which may be assessed by the State as the price of the privilege; and in all well ordered communities, has been kept under the supervision of the law. It has been so kept in this State; and we entertain no doubt that the offence of keeping a house of public entertainment, either in town or country, without first obtaining a license in the mode required by law, is punishable by indictment or presentment.

The offence of retailing spirituous liquors without license, is distinct from this. The term, "tavern," according to Webster, signifies a house licensed to sell liquors in small quantities; but he adds, in some of the United States, it is synonymous with inn or hotel, and denotes a house for the entertainment of travellers, as well as for the sale of liquors. Such, in the opinion of the Legislature, is the fact in this State, as in the act of 1807, they are used as synonymous terms. In the last act upon this subject, the tax upon a license to keep a *tavern* in a village, is ten dollars; and in the same section, the tax for a license to retail spirituous liquors is thirty dollars—a discrepancy which could not exist if a license to keep tavern, *ex vi termini*, was an authority to retail spirituous liquors. [Clay's Digest, 560, § 13.]

Let the judgment be affirmed.